[No. 19020.   Department One. — February 25, 1893.]

ABE HAAS, ASSIGNEE, ETC., RESPONDENT, *v.* W. F. WHITTIER ET AL., APPELLANTS.

INSOLVENCY — PREFERENCE OF CREDITOR — FRAUDULENT INTENT — QUESTIONS OF FACT. — The question of the intent of an insolvent debtor to make a fraudulent preference of a creditor, forbidden by the Insolvent Act, is a question of fact, and not of law.

ID. — TRANSFER OUT OF USUAL COURSE OF BUSINESS — PRESUMPTION — COUNTER-EVIDENCE — BONA FIDE INTENTION. — Where the transfer by an insolvent debtor to a creditor is not made in the usual and ordinary mode of business, the transaction is presumed, *prima facie*, to be a preference, not allowed by section 55 of the Insolvent Act; but such presumption may be overcome by counter-evidence showing that no preference of the creditor over other creditors was intended, but that the insolvent intended *bona fide* to treat all of his creditors alike.

ID. — TRANSFER OF GOODS TO PAY DEBT — EVIDENCE OF INTENT — SPECIAL VERDICT — NEW TRIAL. — In an action by the assignee of an insolvent debtor to set aside a transfer of goods to a creditor in payment of the debt, where there is no evidence of a fraudulent preference, except that the transfer was not made in the usual course of business, and the uncontradicted evidence of the insolvent and of the agent of the creditor showed that there was no intention to make or secure a preference over

| 97 | 411 |
|---|---|
| 111 | 438 |
| 97 | 411 |
| 118 | 434 |
| 97 | 411 |
| 128 | 208 |
| 128 | 564 |
| a128 | 566 |
| 97 | 411 |
| 134 | 672 |
| 97 | 411 |
| 145 | 226 |

other creditors, but both parties intended that all the creditors of the insolvent should share alike, the *prima facie* presumption which the law makes from the unusual nature of the transaction is done away with; and it is error for the trial court to set aside a special verdict of the jury, finding that the transfer was not made with a view to give a fraudulent preference, and that the creditor had no cause to believe that it was made with such view, and to grant a new trial for insufficiency of the evidence to sustain such special findings.

ID. — SPECIAL FINDINGS CONTROL GENERAL VERDICT. — The special findings of the jury against the fraudulent intent of the parties to the transfer will control a general verdict in favor of the assignee of the insolvent debtor, and it is error for the court to refuse to grant a motion of the defendants for judgment in their favor because the general verdict was not supported by the special findings, under section 625 of the Code of Civil Procedure.

ID. — MOTIVES OF CREDITOR IN RECEIVING PROPERTY. — If an insolvent debtor does not transfer his property with the view or intention to give a preference to a particular creditor, it makes no difference what were the motives of the creditor in receiving the property, or what the creditor suspected or believed about the solvency of the debtor.

ID. — INSTRUCTIONS — OMISSION OF QUALIFICATION ELSEWHERE GIVEN — KNOWLEDGE OF INSOLVENCY — VIOLATION OF INSTRUCTIONS. — Where, taking all of the instructions together, and interpreting them fairly, the jury had the right, if the evidence warranted, to find that the creditor and debtor had no intent to make a preference, in violation of section 55 of the Insolvent Act, they do not violate the instructions of the court because one of the instructions, taken by itself, directs a finding for the plaintiff if the debtor was insolvent, and the creditor knew or had reasonable cause to believe that fact, and obtained the transfer in payment of the claim under such circumstances.

ID. — INSTRUCTIONS ALREADY GIVEN — REFUSAL OF REQUEST. — Matters included in instructions given may be properly stricken from an instruction asked for by one of the parties.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial.

The facts are stated in the opinion of the court. The following are the instructions to the jury referred to in the opinion: —

Instructions asked by plaintiff and given: —

"1. It appears in this case that on the fifth day of December, 1887, a petition was filed by certain creditors of Edgar Sessions, in involuntary insolvency, against the said Sessions, and that such proceedings were had therein that afterwards he was adjudged an insolvent, and an assignment of his property was duly

made by the clerk of the superior court on the twentieth day of December, 1887. If, therefore, you find from the evidence that said Edgar Sessions, within one month prior to the filing of the petition aforesaid, assigned and transferred to Whittier, Fuller & Co. the personal property described in the complaint, or any part thereof, and that at the time of making such transfer he was insolvent, and that Whittier, Fuller & Co. knew or had reasonable cause to believe that he was insolvent, and such assignment was made by said Sessions, and received by them, with a view to give them a preference, and to pay the indebtedness of Sessions to them in preference to all other creditors, or with a view of preventing the said property so transferred from coming to his assignee in insolvency, and preventing the same from being distributed ratably among his creditors, or to defeat the objects of, or in any way hinder, impede, or delay the operation of, or to avoid any of the provisions of the insolvency act, such transfer is fraudulent and void, and the plaintiff in this action is entitled to recover the value of the property so transferred.

" 2. A debtor is insolvent when he is unable to pay his debts from his own means, in the ordinary course of business, as they became due.

" 3. In determining the question of whether the assignment was made with the intent to give a preference, you will consider the evidence in the light of the maxim that a party is presumed to intend the natural consequences of his act, and if, from the evidence in this case, and circumstances of the party at the time the transfer was made, you believe that the natural and necessary consequences of the assignment of the property to Whittier, Fuller & Co. was to give a preference to the said Whittier, Fuller & Co. over other creditors, and to prevent a ratable distribution of the property of the debtor among his creditors, it is presumed that the debtor intended to give such preference, or to prevent his property from being distributed ratably among his creditors.

"4. In determining the question. of whether Whittier, Fuller & Co. had reasonable cause to believe that the debtor was insolvent at the time he made the assignment, you will consider all the facts and circumstances by which the parties were surrounded, so far as known to them, or either of them, or to their agent who was negotiating the assignment. It is not necessary that positive knowledge of the insolvency of the debtor should exist, neither is ignorance of the law any excuse, as all men are presumed to and must know the law. If you believe that the debtor was, at the time, in such a condition financially that he could not pay his debts from his own means as they became due, and the said Whittier, Fuller & Co. knew that fact, or had reasonable cause to believe it, and under such circumstances obtained a transfer of the property mentioned in the complaint in payment of their claim, then you should find for the plaintiff."

The above portion of the fourth instruction asked for by plaintiff was given, but the court struck out and refused to give the remainder of such fourth instruction, which was as follows: "And the fact that either Sessions or said Whittier, Fuller & Co., or its agent, may have supposed at the time that the debtor would be able, in the course of time, to work out of debt, does not make any difference in the case. The solvency or insolvency of the debtor is not a question of the possibility of his paying off his debts in the course of time, but it is a question of his ability to pay as they become due in the ordinary course of business, and the fact that a debtor transferred a large portion of his property to one creditor without making provision for an equal distribution of its proceeds to all of his creditors, and especially when the transfer is made, not in the due course of business, and is made under the pressure of the creditor, these are all facts and circumstances to be considered by you in determining whether the assignment was made or intended as a preference of said Whittier, Fuller & Co., and also in determining whether they had

reasonable cause to believe, at the time, that he was insolvent."

" 5. You are further instructed that a transfer of a considerable portion of his property by Sessions to said Whittier, Fuller & Co., the property being of a different character from that which Whittier, Fuller & Co. were accustomed to deal in, and made for the purpose of satisfying a debt, is not a transfer made in the usual and ordinary course of business, and a transfer not in the ordinary course of business is *prima facie* evidence of fraud."

The court refused to give the following instructions, asked by plaintiff: —

" 6. It does not alter the case that Whittier, Fuller & Co. acted in this matter through an agent, for although they were not personally present, yet, having acted through an agent, and especially as they have received the benefit of the assignment, it is in law the same as if they had acted personally in the matter. And furthermore, as a matter of law, Whittier, Fuller & Co. had knowledge of everything known to their agent, and whatever the agent had cause to believe, they had cause to believe; and therefore, if you find that the agent knew or had reasonable cause to believe that Sessions was insolvent at the time said transfer was made to said firm, and that such transfer and payment was made with a view to prevent said property from being distributed ratably among his creditors, or to defeat the object of, or in any way hinder, impede, or delay the operation of, or to evade any of the provisions of the Insolvent Act, such transfer is void, and you should find for plaintiff for the amount stipulated, to wit, $856.99, with interest thereon at the rate of seven per cent per annum from the twenty-sixth day of November, 1887. The court instruct the jury in this case to return a verdict for the plaintiff for the sum of $856.99, with interest thereon at the rate of seven per cent from the twenty-sixth day of November, 1887."

· The following instructions were given on behalf of defendants: —

"1. The question of fraudulent intent is one of fact, and not of law. The jury are exclusive judges of all questions of fact."   ·

"3. You are further instructed, in this case, no actual fraud is charged against these defendants, but the complaint simply charges that the assignment in question was made to defendants by Sessions, and was accepted by these defendants with a view to give a preference to defendants, with a view to prevent the property so transferred from coming to the assignee of said Sessions in insolvency, and to prevent the same from being distributed ratably among his creditors, and to defeat the objects of the Insolvent Act of 1880; and that the defendants had reasonable cause to believe, and knew, that said Sessions was insolvent, and that the transfer was made for the purpose mentioned. Now, if you believe from the evidence that defendants had not reasonable cause to believe as charged, and had no other intent than to collect an honest debt due them by Sessions, and had no intent of defeating the insolvent law, then you must find for the defendants.

"4. Even if you believe from the evidence that Sessions was insolvent at the time of the transfer, and even if he did make the transfer with intent to prefer the defendants to other creditors, if you believe from the evidence that the transfer was made for a valid debt to defendants, and that there was no intent on the part of the defendants to defeat the operation of the insolvent law, and no reasonable cause on their part to believe as charged, you must find for the defendants.

"5. If you believe from the evidence that Sessions did not transfer the property with the view or intention to give preference to defendants, it makes no difference what were the views or motives of the defendants in receiving the property, or what they suspected or believed about the solvency of Sessions. And you should find for the defendants."

"10. If you believe from the evidence that Sessions. had means or resources of his own to pay his debts as they became due in the ordinary course of business, though he may not have had money in his possession or in bank to meet them, or to pay a particular debt when due, he was not insolvent at the time he made the transfer to defendants."

"12. You are instructed that the plaintiff admits that Sessions was, at the time of the transfer in question, indebted to defendants in the sum of $900, and that defendants accepted the goods to the amount of $856.99 in payment of that debt."

*H. A. Barclay*, for Appellants.

*Graves, O'Melveney & Shankland*, and *Chapman & Hendrick*, for Respondent.

The COURT. — This is an action brought to recover a sum of money, which the plaintiff, as assignee of an insolvent debtor, Edgar Sessions, claims should be paid him in his representative capacity by the defendants, W. F. Whittier *et al.*, by reason of their having received from the insolvent, and converted to their own use, certain goods delivered to them in satisfaction of a debt due the defendants by the insolvent.

The proposition upon which the plaintiff based his claim for a recovery is, that the defendants had received the property by a transfer made by the insolvent, with the intention of giving them a preference over his other creditors. The cause was tried before a jury, and they gave a general verdict for the plaintiff, but found "No" upon the special issues submitted to them. The special issues were: 1. At the time that Edgar Sessions transferred to Whittier, Fuller & Co. the goods described in the complaint, was he able to pay his debts from his own means as they became due? 2. Was the transfer of said goods by Sessions to Whittier, Fuller & Co. made in the usual and ordinary course of business of said Sessions? 3. Did Sessions make said transfer with a

view to give a preference to said Whittier, Fuller & Co.?
4. Did Whittier, Fuller & Co., at the time they received
said transfer, have reasonable cause to believe that it
was made with a view to prevent Sessions's property
from coming to his assignee in insolvency? 5. Did
Whittier, Fuller & Co., at the time of said transfer, have
reasonable cause to believe that the transfer was made
to prevent said property from being distributed ratably
among his creditors?

The defendants moved the court for a judgment in
their favor, because the general verdict was not sup-
ported by the special findings under section 625 of the
Code of Civil Procedure. The plaintiff made a motion
for a new trial, and the court below considered the two
motions together, refused that of the defendants, and
granted that of the plaintiff, from which rulings this
appeal is taken.

The real questions involved in the case are, whether
the trial court was justified in believing, upon the evi-
dence and contrary to the view of the jury, that the
preference denounced by section 55 of the Insolvent Act
had been given, and whether such errors of law had
been committed on the trial as warranted a new trial.
It would have been useless to have entered judgment for
the defendants on the special issues found by the jury,
if the trial court had not considered the evidence suf-
ficient to support the special findings of the jury, or had
believed itself to have committed errors of law on the
trial; for immediately following the order for judgment
for defendants, the court would, by granting a new trial,
have rendered the judgment inoperative.

The jury found, as it was proper they should under
the evidence, that the transfer was not made in the usual
and ordinary course of business. This, of course, made
the transaction, *prima facie*, a preference, not allowed by
section 55 of the Insolvent Act. But they also found,
as we think justifiably, from the evidence, that neither
of the parties had, in fact, any intention to violate the
law denouncing a preference' in favor of one creditor

over others. If the court was not right in coming to a different conclusion from the evidence, then it could not, in the exercise of its discretion, grant a new trial on that ground. As we look at the evidence, it is all one way, that both parties were desirous *that all creditors should share alike.* This is shown, in part, by the fact that both of them were willing and desired that a general assignment should be made for all creditors, and were prevented from taking this course by the advice of an attorney, who thought it could not be done. The creditor's agent wished to secure his debt, the debtor wished to settle it in some way, and preferred to make a general assignment, and this, also, the creditors were willing if they were advised it could be done, but they did not proceed in that way, as they were advised to the contrary by an attorney at law. It is clear that there was no intent to make or to secure a preference over other creditors. The main idea of the insolvent was to secure *all his creditors alike;* he had his choice to make an assignment, which, under the advice he had, he was justified in not doing, to be attached, which would render his chance to pay all his creditors worse, or to pay his creditor in goods, as he had not the money. This shows the contrary of any intention on his part to make a preference of one creditor over another.

The truth is, he seems to have been very anxious to do the best he could for *all his creditors.* The creditor had no ground to believe that the debtor intended to make any preference such as the law denounced.

The declaration of the insolvent and the agent of Whittier, Fuller & Co. are directly to the point that they did not have the least intention of preferring any creditor.

The insolvent was a witness for the plaintiff in this action; he is contradicted in his material statements by no witness. And the evidence of both these witnesses was not, on this trial, given orally in the presence of the court, but was, by agreement, read from the

transcript of the case made up when it was in this court on a former appeal.

There was nothing, then, in their manner or appearance, as the court did not have them before it, which could have influenced that tribunal to disbelieve their positive statements, and we perceive nothing in the circumstances to raise any such disbelief. The presumption, *prima facie*, which the law makes from the unusual nature of the transfer is entirely done away with by the testimony of these two uncontradicted witnesses, and the jury was right in its special findings.

The court below had therefore no legal ground to doubt the correctness of their conclusion, and should not have done so.

The question, then, recurs, What, if any, were the errors in law committed by the trial court?

That tribunal should not have directed a verdict for the plaintiff, as the respondent contends it should, for the question *of intent* to make a fraudulent preference, denounced by the statute, was one of fact. (*Bull* v. *Bray*, 89 Cal. 298.) And, as we have seen, there was no evidence except the *prima facie* presumption, which was entirely done away with, to support any such theory of the case as the plaintiff contends for.

The next contention of respondent in support of the court's action is, that the court erred in striking out a portion of the fourth instruction. The matter which it was proper should be contained therein as an instruction, in the part stricken out, was fully covered by the fifth instruction for the plaintiff, and the part of the fourth given. The matter concerning the responsibility of Whittier, Fuller & Co. for the acts of their agent, in the plaintiff's sixth instruction, was sufficiently explained in the plaintiff's fourth instruction granted, and the balance of what was refused was given by the court in the first instruction for plaintiff.

We perceive no objection to the first instruction given for defendants. It is sustained by *Bull* v. *Bray*, 89 Cal. 298. Neither do we perceive any valid objection to the

third and fourth instructions asked and given for defendants.

The fifth instruction is in accordance with the law of this case, as settled by the appellate court in *Hass* v. *Whittier, Fuller & Co.*, 87 Cal. 613.

It is further claimed that the jury found contrary to the fourth instruction given by the court for the plaintiff, and therefore the new trial should have been granted.

Taking all the instructions together, such was not the effect of the findings by the jury; they were not told by the instruction last mentioned to find for the plaintiff at all events, but that if they believed certain facts existed, or things had been done by defendants, they would find for plaintiff, and the basis on which this instruction is placed as one element necessary to show a wrongful intent is, Did defendants know or have reasonable cause to believe the debtor was insolvent when they took the transfer? But the insolvency of the debtor, known to the creditor when he took the transfer, was not the only condition on which the jury were told that they could find for plaintiff. Taking all the instructions together, and interpreting them fairly, the jury had the right, if the evidence warranted, to find that the defendants and the debtor had no intent to make a preference in violation of section 55 of the Insolvent Act.

This they did find in effect, and in so doing they did not violate the instructions of the court.

We think that the court below should not have granted a new trial, but should have rendered judgment for the defendants on the special findings, and therefore the order granting a new trial is reversed, and the court below directed to enter judgment for defendants as herein indicated.

Hearing in Bank denied.