[Civ. No. 4902.   Fourth Dist.   July 14, 1954.]

A. W. BOND, Respondent, v. A. H. DeWITT et al., Appellants.

Miles & Sears and William M. Miles for Appellants.

Matt Goldstein for Respondent.

GRIFFIN, J.—There is some confusion whether the complaint states a cause of action for breach of an oral agreement or whether it states a cause of action for damages for fraud. Plaintiff labels it "Complaint for Fraud" and alleges that defendants A. H. DeWitt and Katherine DeWitt, doing business as Creamers Dairy and Central Valley Creamery, entered into an oral agreement whereby defendants agreed to pay plaintiff a monthly salary equal to the union salary scale prevailing in Fresno County for butter pasteurizers so long as plaintiff would be employed by defendants, and in addition defendants agreed to pay plaintiff 25 per cent of the annual profit earned by the dairy and creamery managed by plaintiff during each of the years he was so employed; that it was agreed in computing the profits, the salary paid by defendants to plaintiff and all reasonable operating expense would first be deducted from the gross income and that said 25 per cent of the net profits would be paid to plaintiff at the end of each calendar year after the accountants for defendants had computed the net profits.

It then alleged that up to June 28, 1951, plaintiff reposed great confidence in defendants and permitted them to manage all of the financial affairs of the creamery and dairy; that plaintiff did not have any familiarity with bookkeeping but trusted the defendants to give to the plaintiff a fair and just account of all profits earned in connection with the oral agreement; that on July 15, 1945, plaintiff entered the employ of the defendants and continued such employment to December 31, 1950, at which time it was terminated; that beginning on January 1, 1946, and each year thereafter, plaintiff requested defendants to render him a written statement of the net profits, but that at no time prior to April 20, 1950,

was any written financial statement prepared by defendants' accountants and presented to him; that in January, 1946, A. H. DeWitt informed plaintiff that the profits earned for the period commencing July 15, 1945, and ending December 31, 1945, were approximately $1,000, and paid plaintiff $250, representing 25 per cent of the profits; that each year thereafter, defendants informed plaintiff that no profits were made during that year but they continued to pay plaintiff a sum of money each year (totaling $3,000 for the entire period) in addition to plaintiff's salary, and informed plaintiff that they were paying these sums on account of future profits which might be earned from the dairy and creamery, and in recognition of the loyal service which he rendered defendants; that on April 20, 1950, defendants delivered to plaintiff a statement purporting to show the operations of the dairy and creamery for the years 1945 to 1949, inclusive; that up to June 28, 1951, plaintiff relied upon and believed each and all of these statements and representations and accepted as true the explanations made by defendants to the plaintiff as to the reasons why the defendants were paying the additional sums over and above plaintiff's salary; that said statements and representations were false and untrue and were known by defendant A. H. DeWitt to be false and untrue; that in truth and in fact the said dairy and creamery managed by the plaintiff earned a total net profit of approximately $100,000 during said period after deducting the salary paid to the plaintiff and all operating expenses; that plaintiff was entitled to receive 25 per cent thereof, namely $25,000, less a credit in the sum of $3,000, for monies theretofore paid, leaving a balance due of $22,000.

Then follows an allegation that plaintiff did not discover the falsity and untrue character of the false and fraudulent statements until June 28, 1951, at which time he caused a partial audit to be made of the books and records at plaintiff's expense; that until said audit was made plaintiff was not aware of the untruth and falsity of said statements showing the methods employed by defendants in concealing from the plaintiff the true and correct net profits earned by the business and in perpetrating the fraud upon the plaintiff.

Then follows the allegation that in connection with the false and fraudulent representations made by defendants and as a part of the scheme to defraud plaintiff out of his just share of the profits pursuant to their agreement, defendants did certain described false, fraudulent, malicious and illegal acts.

It is then alleged that on December 31, 1950, plaintiff demanded from defendants the profits to which he was entitled but that defendants refused to pay plaintiff said sum. Plaintiff then alleges that the acts of defendants were willful, wanton and malicious and that by reason thereof plaintiff is entitled to recover punitive damages in the sum of $5,000.

Then follows the allegation that plaintiff expended $500 for the partial audit and that it would be necessary to have an additional examination and correction made of defendants' books and records, and that such additional auditing expense will be $5,000, making in all, damages in the sum of $5,500 for this item.

The prayer of the complaint is for "*damages* against the defendants" for said amounts.

Defendants answered and denied the allegations of the complaint generally, and specifically denied that Katherine DeWitt was a copartner. They admitted that the plaintiff and defendant A. H. DeWitt entered into an oral agreement and that plaintiff was to receive a salary equal to the union scale and that he was also to receive 25 per cent of the annual net profits for each of the years he was employed, but claim it was agreed that the net profits were to be computed by taking the annual gross receipts and deducting therefrom all deductions allowable for United States income tax purposes, plus a salary for A. H. DeWitt equal to the salary allowed plaintiff, and that said profits were to be computed within a reasonable time after the close of each of said years, and it was then when plaintiff was to be paid his bonus, if any. They admitted that at no time prior to April 20, 1950, was any written financial statement prepared by their accountants and presented to plaintiff. They admitted that such payments made to plaintiff, over and above his salary, were made to him from time to time as he needed more money, and were given to him on account of any past or future bonuses due.

The answer then sets up section 339 of the Code of Civil Procedure and section 1624 of the Civil Code as a bar to plaintiff's recovery. On a motion for nonsuit the action against defendant Katherine DeWitt was dismissed. Plaintiff demanded a jury trial, which resulted in a verdict of $7,500 for plaintiff.

Accompanying the verdict was a special interrogatory submitted to the jury in the following form: "Do you find that A. H. DeWitt fraudulently concealed any income, or fraudu-

lently included any items of expense or charges?'' To this the jury answered ''No.''

On appeal from the judgment defendants claim (1) that the answer of the jury to the special interrogatory was fatally inconsistent with the general verdict of the jury; (2) that the jury was prejudicially misdirected by the giving of an erroneous and contradictory instruction upon the statute of limitations applicable to the case; (3) that the offer and reception of evidence of accounting expenses as an item of special damage was prejudicial error; (4) that the damages awarded were excessive; and (5) that the jury was erroneously instructed that exemplary damages might be awarded upon a finding of fraud on the part of the defendant.

█ If the label plaintiff attaches to his cause of action is correct, i.e., ''complaint for fraud,'' and the recovery claimed is for *damages* for such fraud, as alleged, then it is apparent that the special finding returned by the jury that DeWitt did not fraudulently conceal any income or fraudulently include any items of expense or charges is inconsistent with the general verdict awarding ''damages'' to plaintiff for $7,500. (*Haas* v. *Whittier,* 97 Cal. 411 [32 P. 449]; *Martin* v. *Sutter,* 60 Cal.App. 8 [212 P. 60]; *Williams* v. *San Francisco & N. W. Ry. Co.,* 6 Cal.App. 715 [93 P. 122].) Section 625 of the Code of Civil Procedure provides that the court may direct the jury to find a special verdict in writing, upon all, or any of the issues; and that where a special finding of fact is inconsistent with the general verdict the former controls the latter.

It is plaintiff's position that the special verdict is not inconsistent with the general verdict because there was sufficient evidence to support the judgment on the theory of money had and received (which cause of action was not specifically pleaded), or upon the general theory that the judgment would be supported as an action upon contract and accordingly the question of fraud was immaterial, citing *Portland Cracker Co.* v. *Murphy,* 130 Cal. 649 [63 P. 70]. In that case the action was for the return of money claimed to have been fraudulently appropriated by defendant, and the prayer of the complaint was for judgment for the sum of money had and received, or for conversion. There it was held that the finding that there was no fraud was not inconsistent with the last-named causes of action upon which the judgment was predicated.

In determining the nature of plaintiff's cause of action and

the theory upon which it was tried, we should consider additional facts. The jury was instructed (at plaintiff's request) on the question of fraud in the language of sections 1571, 1572 and 1573 of the Civil Code, and that any concealment of facts constituted fraud where a confidential relationship existed. The jury was specifically instructed that "plaintiff claims and alleges that he suffered and sustained certain damages and losses by virtue of the alleged fraud of the defendant"; and that the "measure of damages for the breach of an obligation arising from fraud, is the amount which will compensate the person injured thereby for all detriment proximately caused thereby"; that "for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, . . . a plaintiff, in addition to actual damages, may recover damages by way of example and by way of punishing the defendant." This was followed by an instruction that the "Statute of Limitations has been raised as a defense in this action by the defendant. The burden of proving that the Statute of Limitations bars any of the claims alleged in the plaintiff's complaint rests with the defendant"; and that (quoting Code Civ. Proc., § 338, subd. 4) "An action for relief on the ground of fraud or mistake (must be commenced within three years of the accrual of the cause of action). The cause of action in such case (is) not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." The court then gave defendants' proferred instruction that the law "prevents this plaintiff from recovering damages for any breach of his agreement prior to November 9, 1949, unless he can prove by a preponderance of the evidence . . . 1. That any such prior breach of the agreement was fraudulently concealed from him, and 2. That he did not discover such breach prior to November 9, 1949."

As an element of special damage the court allowed plaintiff to testify that he expended $1,300 accountant's fees in auditing and ascertaining the facts in reference to defendant's operating costs and net profits for the five-year period beginning June 15, 1945, to December 31, 1950. In no instance did the trial court indicate that a judgment could be returned for plaintiff on any other basis than damages for fraud. There was no indication that such a verdict could be returned on the theory of money had and received or conversion or upon an oral contract notwithstanding the failure of proof of fraud, and no such instruction was offered. It is apparent that the

case was tried upon the theory of a recovery for damages for plaintiff upon the ground of fraud. Accordingly, the special finding of the jury that the defendant did not fraudulently conceal any income, or fraudulently include any items of expense or charges was inconsistent with a recovery upon the theory upon which plaintiff proceeded. (*Haas* v. *Whittier, supra.*)

It is apparent that plaintiff was relying upon fraudulent concealment of the facts to bar the operation of the statute of limitations. The action was not commenced until November 9, 1951, and to avoid the operation of the three-year statute of limitations (Code Civ. Proc., § 338, subd. 4), plaintiff alleged that the fraud was not discovered until June 28, 1951. The court gave an instruction in the language of that section and subdivision, even though defendant did not plead that section or subdivision as a defense but did plead section 339 of the Code of Civil Procedure without naming the subdivision. It also gave an instruction that no recovery could be had for breach of the agreement prior to November 9, 1949, unless plaintiff could prove that any prior breach was concealed from plaintiff, and that he did not discover such breach prior to November 9, 1949. The action was filed on November 9, 1951. Apparently the court has also attempted to apply the two-year statute of limitations, namely, section 339, subdivision 1, of the Code of Civil Procedure. Under the pleadings as they exist and the theory upon which the case was tried these two instructions are in hopeless conflict and cannot be reconciled.

If plaintiff is relying upon the theory of money had and received or a conversion without fraudulent intent, or upon breach of contract to sustain the judgment, then any evidence of *special damage* in payment of accounting fees was inadmissible, and if admissible at all, it was only admissible under the theory that the action was for damage for a tort arising from the fraud as alleged. (*Haigler* v. *Donnelly,* 18 Cal.2d 674 [117 P.2d 331].) In determining the amount of the judgment returned, the jury may have taken into consideration the item of $1,300 accountant's fees. If so, it could not be supported in face of the special finding that no fraud was committed by defendant. A similar conclusion might well be reached in regard to the instruction pertaining to exemplary damages, even though the verdict returned recited that it was for *"compensatory damages."* This conclusion is fortified by the fact that a judgment on the verdict was

entered for $7,500, after plaintiff's attorney, in his argument to the jury, told it that plaintiff had not been successful in proving damages in excess of $6,206.97 (which included the $1,300 accounting item); and that the jury was to be the judge whether punitive damages should be awarded in addition to that amount. On the motion for a new trial, counsel for plaintiff, in answer to the contention that the judgment was excessive, offered, in writing, to stipulate to a reduction of the judgment to $6,206.97. The court refused the stipulation and denied the motion for a new trial. From the facts presented it appears that the motion should have been granted.

Counsel for plaintiff concedes that in an action based upon fraud, it is the duty of the plaintiff and the burden is cast upon him to prove that the fraud was not discovered more than three years prior to the commencement of the action, but contends that the instruction placing the burden of proof of the statute of limitations on the defendant was proper when considered with the court's instruction that the burden rests upon the plaintiff "to prove by a preponderance of the evidence all elements of his case." *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75 [172 P.2d 725], correctly states the rule, and no doubt on a new trial a more adequate instruction on this subject will be given.

We conclude that the errors pointed out were sufficiently erroneous and prejudicial to the defendant to require the granting of a new trial.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.