[Sac. No. 146.    In Bank.—October 4, 1897.]

In the Matter of MULLER & KENNEDY, in Insolvency.

INVOLUNTARY INSOLVENCY—TRANSFER OF STORE BY INSOLVENT FIRM—PREF-
ERENCE OF CREDITOR—CONTEMPLATION OF INSOLVENCY—FRAUD—QUES-
TION OF FACT—PRIMA FACIE EVIDENCE—REBUTTAL—SUPPORT OF FINDINGS.
Upon the trial of a petition in involuntary insolvency by creditors of
an insolvent firm, charging that, within thirty days next preceding,
the firm had transferred its stock in trade, and the fixtures and book
accounts of its store, with intent to hinder, delay, and defraud the
creditors of the firm, and also in contemplation of insolvency, where
the evidence showed that the transfer was made to one creditor in
payment for borrowed money, and did not exceed the debt in value,
and it was testified that, at the time of the transfer, there was no
intention to hinder, delay, or defraud any creditors, and that the firm
and each partner, though insolvent in fact, did not contemplate insol-
vency, or intend to file any petition in insolvency, the question of
their intent to make a fraudulent preference forbidden by the Insol-
vent Act, is a question of fact, and not of law; and, although the
fact that the transfer was out of the usual course of business, was
*prima facie* evidence of fraud, yet such *prima facie* evidence might be
overcome by rebutting evidence, and where the court found against
any intent to defraud, and against any contemplation of insolvency,
at the time of the transfer, and refused an adjudication of insol-
vency under the petition, its findings and judgment cannot be disturb-
ed upon appeal for insufficiency of the evidence.

ID.—RIGHT OF INSOLVENT DEBTOR TO PREFER CREDITORS.—Except as limited
by the statute, an insolvent debtor may lawfully make preferences
among his creditors, even to the extent of transferring all of his
property to one creditor to the exclusion of others; and a conveyance
of property which pays one creditor a just debt and nothing more,
is not fraudulent *per se* against other creditors of the insolvent debt-
or, and can only be attacked by showing that it is in violation of the
insolvent law.

APPEAL from a judgment of the Superior Court of San Joa-
quin County.   Joseph H. Budd, Judge.

The facts are stated in the opinion.

James A. Louttit, and Joseph Kirk, for Appellants.

Gould & Bogue, for Respondents.

THE COURT.—When this case was in Department the opin-
ion hereto attached was prepared by the commissioners, and, the
justices of the Department not being able to agree as to the

proper disposition of the appeal, the case was ordered into Bank. After due consideration of the case in Bank, we are satisfied with the conclusion reached by the commissioners; and for the reasons given in their opinion the judgment is affirmed.   The opinion prepared by the commissioners is as follows:

SEARLS, C.—"This is an appeal by petitioning creditors from an order of the superior court in and for the county of San Joaquin refusing an adjudication of insolvency, and from a final judgment in favor of respondents for their costs.

"The appeal was taken within sixty days after the rendition of judgment, and is supported by a bill of exceptions.

"The petition alleges two distinct acts or grounds of insolvency on the part of Muller & Kennedy, the respondents, viz: 1. A transfer of their property on the nineteenth day of July, 1895, at the city of Stockton, with intent to hinder, delay, and defraud their creditors; 2. A transfer of the same property (a stock of groceries) in contemplation of insolvency.

"Defendants answered, denying the material allegations of the petition.   The court found in substance as follows: 1. That on the nineteenth day of July, 1895, respondents, as partners, made a transfer of their property, viz., a stock of groceries, provisions, and other merchandise in the business conducted by them at Stockton, to one Kate Murray; said transfer was not made to hinder or delay or defraud their creditors; 2. That at the time of such transfer said respondents were and now are insolvent, and they had not then, and have not now, sufficient property with which to satisfy the claims and demands of the petitioners in this proceeding; 3. The third is the same as the first as regards the assignment to Kate Murray, with the addition that the 'sale, conveyance, and transfer was not made in contemplation of insolvency'; 4. The fourth is in substance the same as the second.

"Upon these facts the court drew the conclusion of law that the proceeding should be dismissed and that respondents have their costs.

"The first point made by appellants for reversal is, that the evidence is insufficient to justify the finding that the conveyance was not made with intent to hinder or delay or defraud creditors.

"The evidence bearing on this point is that given by the re-

CXVI.I. CAL.—28

spondents, and is in substance and effect that Muller & Kennedy were copartners in the retail grocery and provision business at Stockton. The stock in trade, fixtures, and book accounts of the firm were worth eight to nine hundred dollars, and they had no other assets; either the firm or Muller (it is not clear which) owed Kate Murray eight hundred dollars for money borrowed to pay an equal sum which had been borrowed and placed in the business. They were at the same time indebted to the petitioners here and others to the extent of seven hundred or eight hundred dollars, besides the demand due Kate Murray. A few of their bills were overdue and creditors were urging payment. Kate Murray wanted her money, and they could not pay, whereupon she was about to bring suit and attach the store. To avoid this they, on July 19, 1895, sold and conveyed to her by bill of sale the entire stock, fixtures, and book accounts of the store, also the lease of the store, in payment of her demand, and she at once took possession. Kennedy says: 'I never did intend to file a petition in insolvency on my own behalf, or on behalf of the firm of Muller & Kennedy. We did not contemplate insolvency when this bill of sale was made, nor did I intend to hinder, delay, or defraud any creditors of the firm.'

"Muller also testified that he never contemplated insolvency for himself or the firm, and never intended to file a petition in insolvency on his own behalf or that of Muller & Kennedy. Both the respondents admitted that they, as individuals and as a firm, had no property or assets except that sold to Kate Murray.

"The question of the intent of an insolvent debtor to make a fraudulent preference of a creditor, forbidden by the Insolvent Act, is a question of fact and not of law. (*Haas v. Whittier*, 97 Cal. 411; *Morgan v. Hecker*, 74 Cal. 540; *Bull v. Bray*, 89 Cal. 298; Civ. Code, sec. 3442.) That respondents made the sale of all their property is conceded. That such sale was made within thirty days next before the institution of the insolvency proceeding, and that they were in fact insolvent at the time, is abundantly established.

"Respondents were retail dealers in groceries. They sold out their entire stock in trade and store fixtures and transferred their lease in one transaction, hence such sale was 'not made in the usual and ordinary course of business,' and is *prima facie*

evidence of fraud under section 59 of 'An act for the relief of insolvent debtors, for the protection of creditors and for the punishment of fraudulent debtors.' Approved March 26, 1895. (Stats. 1895, p. 131.) The section quoted follows section 55 of the insolvent law of 1880. There is no direct evidence that Kate Murray knew or had reasonable cause to believe that her debtors, the respondents here, were insolvent, etc. This fact is not an important one here, as the proceeding is not one to annul the sale to Kate Murray, but to have the respondents declared insolvent. The crucial question is, Did the respondents transfer the property in question with intent to hinder, delay, or defraud their creditors?

"The direct testimony of Kennedy negatives any such intent, and there is no testimony contradicting him, except as it is to be inferred by the attending circumstances. The findings being in favor of respondents, the question with us on appeal is, not how we would decide upon the testimony were it before us for original action, but rather is there some testimony in support of the conclusion reached by the court below.

"There is no reason to doubt but that respondents were honestly indebted to Kate Murray in the sum of eight hundred dollars, and that the value of the property conveyed to her was not in excess of her demand. Except as limited by the statute, an insolvent debtor may lawfully make preferences among his creditors, even to the extent of transferring all his property to one creditor to the exclusion of the others.

"The right of a debtor under the rules of the common law to devote his whole estate to the satisfaction of the claims of particular creditors results, as Chief Justice Marshall declared in *Brashear v. West*, 7 Pet. 608, 614, 'from that absolute ownership which every man claims over that which is his own.'

" 'It is an absurdity to say that a conveyance of property which pays one creditor a just debt, and nothing more, is fraudulent as against other creditors of the common debtor. In a fair race for preference, if a creditor by diligence secures an advantage, it may be maintained; but if his purpose is not to collect the claim, but to help the debtor cover up his property, he cannot shield himself by showing that his debt was *bona fide*.' (Waite on Fraudulent Conveyances, sec. 390; *Saunderson v. Broadwell*, 82 Cal.

132; *Matter of Luce, etc.,* 83 Cal. 303; *Haas v. Whittier,* 97 Cal. 411; Bishop on Insolvent Debtors, 192, 193.)

"The foregoing remarks are indulged and the authorities referred to for the purpose of showing that the payment made by respondents to Kate Murray was not *per se* fraudulent, and can only be attacked by showing it to be in violation of the insolvent law.

"There is, then, no circumstance attending the payment in question by respondents of which the statute takes cognizance as a badge of fraud, except the fact that the sale was not 'made in the usual and ordinary course of business of the debtor,' which fact, as before stated, is *prima facie* evidence of fraud.

"The court below, with the witnesses before it, with opportunities to judge as to their credibility and character which we do not possess, was evidently of opinion that the testimony rebutted the *prima facie* case made by the statute.

"We regard the case as a close one, but do not feel justified in reversing the finding. We have examined the point made by appellant, that the finding 'that the transfer was not made in contemplation of insolvency' is unsupported by evidence, and are of opinion that the finding is less open to attack than that before considered, and our conclusion is the same as that reached upon the first point.

"We recommend that the judgment be affirmed.

"Belcher, C., and Britt, C., concurred."

Beatty, C. J., did not participate in the foregoing decision.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.