[L. A. No. 6473. In Bank.—February 17, 1922.]

CATHARINE McCARTHY, Respondent, v. SECURITY TRUST AND SAVINGS BANK (a Corporation), as Executor, etc., Appellant.

[1] Action to Quiet Title—Deed—Execution and Delivery—Sufficiency of Evidence.—In this action to quiet title it is held that the evidence is sufficient to sustain the finding of the execution and delivery of a deed upon which plaintiff bases her title.

[2] Id.—Delivery—Request not to Record.—The oral request of the grantor that a deed be not recorded until after her death does not defeat a delivery otherwise effective.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andrew J. Copp, Jr., for Appellant.

J. Vincent Hannon and J. E. Hannon for Respondent.

SLOANE, J.—This appeal is from a judgment of the superior court of the county of Los Angeles, quieting title in plaintiff and respondent to real estate in the city of Los Angeles.

An appeal was taken to this court by the defendant, and was transferred to division one of the first district court of appeal. The case comes back to this court upon an order for hearing after a reversal of the judgment by the district court of appeal.

The opinion of the district court summarizes the facts in the case as concisely and clearly as it could be put into words:

"Plaintiff's action is declared upon a deed claimed to have been witnessed and acknowledged before a notary. The deed itself is lost, the notary dead, his records destroyed, and it is admitted that no one other than the plaintiff, her grantor and the notary, ever knew of its existence, plaintiff keeping knowledge of the conveyance an absolute secret. Aside from this the deed was never recorded, and the grantor after the alleged conveyance assumed apparent ownership in the property. She remained in absolute possession and exercised full and complete dominion over the same. She collected the rents, paid the taxes and mortgaged the property, the acknowledgment to which instrument was taken before the very notary whom plaintiff alleged prepared her deed and who knew of the existence and contents thereof. . . .

2. Effect of delivery of deed to grantee, subject to a future extrinsic condition, note 16 **L. R. A.** (**N. S.**) 941.

"From plaintiff's testimony it appears that one Mary G. Nicolson was for many years prior to the conveyance here alleged the owner of the property in question. In the month of April, 1915, she became seriously ill, and was advised by her physician that she had not long to live. Upon receiving this information she sent for the plaintiff, her sister, who remained with her for about two months. A few days after plaintiff's arrival, Mrs. Nicolson, believing she was about to die and for the purpose of disposing of her estate, requested plaintiff to summon a Mr. Stedman, a notary public who had attended to her business affairs, for the purpose of preparing a deed to the property in question. Accordingly, so plaintiff testifies, the notary was directed to and did prepare the conveyance from Mrs. Nicolson to plaintiff. A day or so thereafter a deed to the same property was, under the direction of Mrs. Nicolson, made by plaintiff to a son of Mrs. Nicolson, who was her only child. By the terms of this last mentioned deed the plaintiff, so far as can be gathered from her testimony, retained a life interest in the property with remainder over to the son of the original grantor. Both deeds were signed by the respective grantors, duly acknowledged with notarial seal affixed. The deed so executed by plaintiff to the son of the grantor was made by plaintiff at the request of Mrs. Nicolson, who feared that plaintiff might accidentally get killed."

Mrs. Nicolson died about a year and a half later. It must be conceded that the plaintiff's case as to the execution of the deed on which her claim of title rests is based upon about as insecure a foundation as could be imagined. The circumstances, as narrated, present either a deliberate fabrication or a most unusual absence of all the primary evidence accompanying such a conveyance. The really suspicious feature of the case is the loss and disappearance of all the physical evidence of the alleged transaction. But the witness testified in the presence of the trial judge. Her appearance, her manner, and evident credibility on the stand may have justified the trial court in believing every word she said. She testified that her sister told her she wanted to deed her this property and sent her for the notary to prepare the papers. She testified to the execution of the deed, and sufficiently stated its contents to show that it

was a grant deed in due form purporting to convey the property as described in the complaint from her sister to herself, and to the loss of the deed and the death of the notary, the only other witness to its execution, and to the loss of his notarial records. These latter facts were substantiated by other witnesses. The only other corroborating evidence was that of a witness who testified that Mrs. Nicolson had subsequently to the alleged date of this deed told her that she had provided for her sister, the plaintiff, and that her sister would always provide for Walter, her son, and that she had made deeds of her property.

The trial court on the evidence before it found that "Mary Grace Nicolson was at the date of the deed hereafter mentioned the owner of said real property described in the complaint, and on or about the twenty-ninth day of April, 1915, made, executed and delivered to the plaintiff a grant deed thereof, and the plaintiff thereupon became and ever since has been the owner of the said real property."

We cannot question this finding so far as it is supported by the evidence, no matter how unusual the circumstances or inherently improbable the conditions. If the judge who tried the case was satisfied of the credibility of the witness the facts testified to were sufficiently established.

The only particular in which it is questioned that the facts given in evidence failed to show an executed conveyance is in the matter of delivery. It is contended that it does not appear that Mrs. Nicolson ever parted with the custody and control of the deed to her sister. The testimony of the plaintiff on this point was in substance as follows: "After the deed was signed and acknowledged the notary took it up to his office, and I went up in a day or two and he gave me the deed and I took it down and gave it to her, and she says, 'Kate, you take it and take care of it, and when I die, you put it on record,' and I did. She said, 'If you should get killed accidentally, or not have a chance to make out a deed to Walter, if you still held it, I wish you would make out a deed now to him.' Walter was her son. He was about twenty-six years old. She requested that I make a provision for Walter, so that he would get the property when I was through with it, and I made him a grant deed. I made the deed at Mr. Stedman's office. This was a day or two after the other deed had been

delivered to me. I put both deeds in my trunk. I never recorded them. I had the deeds after my sister's death, and after that the deeds disappeared. My sister died September 11, 1916. I had the deeds until July, 1917. They were in my trunk. I discovered that the deeds were no longer in my possession in August.

"I had been looking over my papers, destroying some old insurance papers and I had all my papers together, these deeds along with them, and I feel that I must have burned them. Walter was not to receive the deed to him until I died, if there was anything left. I never delivered it to him.

"I kept the deed to me all the time in my trunk. I was in the house with my sister about two months after it was handed to me by my sister. When she handed it to me she said, 'Kate, you take care of this deed and after I die you put it on record.' I kept my trunk locked all the time it was there. My sister could have had access to it if she wanted to; the key was right there on a shelf. The only thing my sister said to me afterward about the deed was, in the summer after she returned from the hospital. One day she asked me if I had the deed and I said I had. She never asked me for the deed. My sister asked me never to say anything to Walter about the deed from her to me, and in that way I never spoke about them to anybody."

[1] We think this testimony justifies the finding of the trial court that there was a sufficient delivery of the deed to pass title to the plaintiff, especially in view of the declared purpose of the grantor to deed the property to the plaintiff. What the intent of the grantor was in handing over the completed instrument to the grantee was a question of fact for the trial court, under all the circumstances of the transaction, and this intent of the grantor to pass title was a fair inference from the facts given in evidence.

It is true that her statement requesting that the grantee take care of the deed until she, the grantor, was dead, and then record it, did not show conclusively an intent to surrender all control of it, but taken in connection with her request a day or two afterward that the grantee, in turn, make a deed to the son, would indicate the grantor's understanding that she had conveyed the title to her sister. The fact that Mrs. Nicolson thereafter executed a mortgage on

the premises, while tending to show a continuing claim of title, was merely a circumstance to be weighed against the affirmative evidence of delivery.

[2] The oral request of the grantor that the deed· be not recorded until after her death does not defeat a delivery otherwise effective. (Sec. 1056, Civ. Code; *Mowry* v. *Heney,* 86 Cal. 471 [25 Pac. 17]; *Hammond* v. *McCollough,* 159 Cal. 639 [115 Pac. 216]; *Lewis* v. *Brown,* 22 Cal. App. 38 [133 Pac. 331].)

It does not appear, as contended, that the deed after being handed to plaintiff did not remain in her exclusive custody and control. She kept it in her trunk under lock and key. The fact that while she remained in her sister's house the key to the trunk was accessible to the latter does not suggest any right to open or remove the contents of the trunk.

The judgment is affirmed.

Shaw, C. J., Shurtleff, J., Wilbur, J., and Lawlor, J., concurred.