[Civ. No. 14235.   Second Dist., Div. One.   Dec. 10, 1943.]

MNO PIERCE, as Administrator, etc., Respondent, v. JAMES W. PIERCE et al., Appellants.

James W. Pierce in pro. per., for Appellants.

Louis J. Euler for Respondent.

WHITE, J.—Plaintiff, as administrator of the estate of Herbert A. Pierce, deceased, instituted this action to set

aside three deeds to four parcels of real property conveyed by said decedent during his lifetime to defendants, who are his son and daughter, and also to recover the sum of $2,100 cash allegedly obtained from said decedent by defendant Nellamae Pierce Brown, allegedly without consideration therefor and by means of fraud, deception and undue influence allegedly exerted by said last named defendant daughter.

The real property and money around which this litigation centers was allegedly obtained by defendants about January 8, 1942. The father, Herbert A. Pierce, died on February 19th of the same year. Prior to his death and on September 26, 1941, decedent executed an holographic will leaving his entire estate in equal shares to his four adult children, who, in addition to both defendants, included plaintiff Mno Pierce, administrator of his father's estate, and Mrs. Lillie B. McClellan.

The complaint alleged that during the last illness of decedent and approximately five weeks prior to his death defendants "fraudulently taking advantage of the incapacity, illness and weakness of mind of said Herbert A. Pierce, deceased, and through exercising undue influence upon said decedent, caused him to sign deeds to the aforesaid four parcels of property then owned by him to the defendants herein." Then follows similar allegations as to the alleged activities of defendant Nellamae Pierce Brown in obtaining from her father the sum of $2,100 cash.

By their answer defendants generally and specifically denied the allegations of fraud, deception and undue influence alleged in the complaint, and by way of an affirmative and separate defense set forth that "each and every of the said transfers of real property and personal property were made upon valid and valuable consideration passing from and to these defendants and the said decedent."

The cause was tried before the court sitting without a jury, resulting in a judgment against defendants adjudging and decreeing the aforesaid deeds to be null and void and directing defendants to convey said properties to the estate of their father, Herbert A. Pierce. Also by the judgment herein, the above mentioned sum of $2,100 cash was decreed to be part of the estate of Herbert A. Pierce and that the transfer of said sum to defendant Nellamae Pierce Brown was null and void. From this judgment both defendants have appealed.

697

The single contention advanced on this appeal is that the adverse findings and judgment are without support in the evidence. Stating the evidence in a light most favorable to plaintiffs, as we are required to do following a judgment rendered in their favor, we find in the record testimony that at the time of the transactions which gave rise to this litigation decedent was of the age of 86 years; that on an occasion approximately one month before his death decedent was "nervous and quite upset"; that he inquired as to the location of the bathroom in the place where he was residing, was led thereto and in a few minutes when the witness went to look for him "he was in the back bedroom and he had done a job on the floor. He was very confused." That during the month of December preceding his death and execution of the deeds here in question, decedent was confused mentally; that "he did not know how to get his sweater on"; that in putting on his underwear he would "get his legs in the arms and his arms in the legs." A physician testified that he was called to treat decedent professionally on January 28, 1942, that "his heart muscle was not working the way it should, or he might possibly have had a beginning cerebral hemorrhage." The cause of decedent's death on February 19, 1942, was cerebral hemorrhage. There was medical testimony that the condition of body and mind which caused decedent's death is progressive and gradual in the degenerative changes that attended it. A nurse who was in attendance upon the decedent testified that during his last illness "he seemed very much disturbed and he grabbed hold of my hand after one of Miss Lillian's visits. He said 'They are not going to take me away'. I said 'No, sir, they cannot take you away. You are not able to go. They are not going to take you away.' He says, 'There is something doing; they are fixing something.' He was so—he had this obsession that they were going to take him away and put him in a hospital, or old people's home, or something." Another witness testified that when she visited decedent in the latter part of January, 1942, "He was failing very fast ... very weak ... he did not know just where he was, whether he was there or in a sanitarium ... he thought he was in the mountains some place. He said 'The water is so nice up here.' He didn't know he was home . . . his memory was very poor." There was also testimony that from about

Christmas time in 1941 until his death some two months later decedent "couldn't remember"; complained at times that he was dizzy and "just didn't seem to be able to carry on a clear conversation." There is also in the record evidence that by his will, executed September 26, 1941, decedent divided his estate equally between his four adult children, that he stated "he was going to divide it equally; that they would share alike; each of them." It was also in evidence that after offering for probate the just mentioned original will of September 26, 1941, and after its admission to probate, defendant James W. Pierce proffered for probate another will, or as he designated it—a codicil, by the terms of which the very same parcels of property, transferred by the deeds here in question, were bequeathed to the defendants herein. With reference to the last named document, defendant James W. Pierce testified that the administrator of the estate of his father contested it; that upon a trial the court found that it was fictitious and denied its admission to probate. Defendants failed utterly to establish the truth of the allegation contained in their affirmative defense that a good and valuable consideration passed between the parties to the challenged deeds. In this connection it was admitted by the defendants themselves that at the time of the execution of the deeds decedent stated that "to make the deeds legal" each of the defendants, as grantees therein, should give to their father, as grantor, the sum of $10. This was done but subsequently the major portion of such sums, if not all thereof, was returned to defendants by their father. Another witness, Mrs. Jeannette Brown, testified that she was acquainted with defendant Nellamae Pierce Brown; that upon one occasion defendant Mrs. Brown "showed me, took out the deed from her purse and showed it to me and said, 'My father has turned over a very good piece of property to me.' I didn't pay much attention. Finally we went downstairs and she took it out again. I said, 'Let me see it,' I looked at it and I says, 'Well, Nell, this isn't signed; this isn't any good.' And she said, 'Oh, it will get signed.' I said, 'You should have had the father sign it while he was in the mood.' She said, 'Oh, he will sign it.' She says something to the effect, or 'He better, if he knows what is good for him,' or something to that effect." There was also testimony that upon another occasion when defendant Nellamae Pierce Brown was asked "You have your own home, and

you are under no obligation to stay here with your father. Why don't you go to your own home?'' She replied, ''He don't need to think that he is going to get rid of me. I am going to be right here at the finish.'' Thereupon the witness asked decedent why he kept his daughter, Mrs. Brown, at his home, and her testimony in regard to that incident is ''He said he couldn't put her out. He seemed to be afraid of her.'' Another witness, who was a daughter of the decedent, testified that the latter often spoke ''of the way she treated him,'' referring to defendant Mrs. Brown; that ''she was abusive to him and swore at him.'' The same witness testified that she heard defendant Mrs. Brown swear at her father ''time and again for several years . . . the main expression she used was 'You damn old fool', that was the way she spoke of my father.'' The same witness testified to an occasion when defendant Mrs. Brown said to her father ''If I have to leave here, you will go too, because I will burn this house down.'' There was other testimony substantiating the foregoing treatment of decedent by his daughter, defendant Mrs. Brown, as well as testimony indicating a neglect of him by her while she was living at his home and taking care of him. There was also testimony to the effect that he frequently complained of such treatment but declared his inability to ''get rid of her.''

It is true there was evidence contradictory of some of that just narrated; that the relationship existing between the decedent and his two children, named herein as defendants, was harmonious, kindly, friendly and affectionate, but there was also positive testimony to the contrary which, in addition to that hereinbefore recited, need not here be set forth.

Appellants contend that their father desired to favor them because the other two children on or about January 16, 1942, instituted proceedings for the appointment of a guardian of his person and estate, but there is also in the record evidence that such a proceeding met with his unqualified approval; that prior to the filing thereof his son and plaintiff herein, Mno Pierce, discussed with his father the advisability thereof and obtained his consent thereto. In any event, the guardianship proceedings were not instituted until after execution of the deeds and transfer of the cash here involved.

In view of the foregoing and where as here, appellants challenge the judgment on the ground that the record is barren of any substantial evidence to support the same,

it is well settled and firmly established in our law, as was stated in *Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486], that "When a judgment is attacked as being unsupported by the evidence, the power of the appellate court in passing on this question begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury; and on appeal from a judgment for defendant in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the defendant, and all legitimate and reasonable inferences indulged in to uphold the judgment, if possible; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury. (*Crawford* v. *Southern Pac. Co.,* 3 Cal. 2d 427 [45 P.2d 183].)" The case at bar presents substantial evidence which, if believed by the trial court, tended to establish that decedent was an elderly man, 86 years of age, mentally feeble and to a degree childish in his conduct and actions; unable at times to even dress himself or know where he was; that one of the defendants, his daughter, swore at him; that she resided in his home and that he was in fear of her; that he had drawn a will leaving his estate in equal shares to his four children when two of the adult children, defendants herein, secured from him deeds to four parcels of property approximately one month prior to his death; that such deeds were not obtained openly but secretly; that the notary attesting the signature on some of the deeds was brought to the decedent's home by one of the defendants; that on other deeds defendant James W. Pierce was himself the notary. That plaintiff, administrator of the estate and another adult child of decedent, knew nothing about the execution of the deeds until it was accidentally brought out in subsequent court proceedings; that decedent Herbert A. Pierce for several months prior to his death was physically and mentally ill.

Under strikingly similar circumstances judgments setting aside conveyances on the ground that they were obtained by fraud and undue influence exercised upon and against elderly persons were upheld in *Payne* v. *Payne,* 12 Cal.App. 251 [107 P. 148], and *Mau* v. *McManaman,* 29 Cal.App.2d 631 [85 P.2d 209].

It is only when evidence upon its face may justly

be held to be insufficient to support the ultimate issue involved that appellate courts are authorized to review the evidence because in such a case, it is not a review of a question of fact but purely one of law. ▆ And, before an appellate tribunal can reject the positive testimony of a witness who is believed by the trial court, such testimony must be inherently improbable. The testimony herein, upon which the trial court relied, does not admit of such stricture. ▆ Neither does the fact that the testimony may disclose circumstances which are unusual justify review thereof by the appellate court which does not sit as a jury to determine the issues of fact, the credibility of witnesses or the weight to be attached to their testimony. ▆ In the instant case we are not directed to nor do we find anything in the record to justify this court in concluding from all the facts and circumstances here present that there was not sufficient legal evidence upon which the trial court could rely in determining that the deeds in question were null and void; that the real property sought to be conveyed thereby, as well as the alleged gift of $2,100 cash, belonged to and are the property of the estate of Herbert A. Pierce, deceased.

The judgment must therebefore be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 31, 1943, and appellants' petition for a hearing by the Supreme Court was denied February 7, 1944.