[Civ. No. 14978.   Second Dist., Div. Two.   Nov. 9, 1945.]

CHARLES PARKER TEMPLE et al., Appellants, v. COR-
PORATION OF AMERICA (a Corporation) et al., Re-
spondents.

William T. Selby and Loughman & Loughman for Appellants.

Hugo A. Steinmeyer and J. A. Lazaroni for Respondents.

MOORE, P. J.—Plaintiffs sued for the cancellation of a note in the sum of $1,040, dated October 11, 1934, and a trust deed given as security therefor. The bases of the action were: (1) that the instruments were void because at the time of their execution no disclosure of their existence to the Home Owners' Loan Corporation was made by defendant; (2) that the execution and delivery on October 29, 1934, of a mortgagee's consent to take the bonds after delivery of the note and trust deed was a complete satisfaction of those instruments. These contentions are reasserted on appeal and in addition thereto appellants insist that the findings are not supported by the evidence.

For some time prior to July 20, 1934, appellants were indebted to the Bank of America in the principal sum of $6,500 evidenced by two promissory notes each of which was secured by a trust deed upon the home of appellants. In addition to that sum appellants owed interest, delinquent taxes and street assessments. In 1933 and 1934 demands for payment upon the debt were vainly made, Dr. Temple having more than once offered to convey the property in return for a release of the debt. Not until June of 1934 did their conversations take on the semblance of serious negotiations. Then the bank in order to relieve itself of an undesirable loan suggested the possibility of refinancing the loan through the Home Owners' Loan Corporation, hereinafter designated as the "corporation." Thereafter in July the bank was advised by the corporation that the latter's appraisal of the property was $5,200 and that it would deliver its bonds in the proximate amount of $3,600 in payment of the total obligation. In conferring with Dr. Temple upon the offer the bank's manager informed him of its unwillingness to accept the bonds offered in full satisfaction, and that if the corporation would

not increase the amount of its bonds the bank would require a note with a second trust deed as security for the difference between the amount offered and the amount of the *appraisal,* and an unsecured note of the doctor for the balance of his debt. In such event the entire indebtedness would be still outstanding. Although no agreement was then reached, thereafter the bank endeavored to induce the corporation to increase the amount of its commitment but without avail. On July 20, the bank delivered to the corporation a ''Mortgagee's Consent to Take Bonds'' for the debt of appellants signed by the bank. With the ''Consent'' was a letter of the same date from the bank to the corporation which reads: ''The amount that we are to receive as mentioned in our Consent is less than the total amount of indebtedness and the borrower has agreed to make satisfactory adjustment of the deficiency. We are therefore forwarding you this amended consent with the understanding and upon the condition that the borrower will make such adjustment.''

No action was taken by the corporation upon these documents. However, negotiations continued between the bank and the doctor with reference to the refinancing. On October 9, 1934, without the knowledge of the corporation the bank's manager advised Dr. Temple that the federal agency would take over the loan on his home and give its bonds to the bank and had consented that the latter might take a second trust deed. Also he told Dr. Temple that the bank would accept the bonds if he and Mrs. Temple would execute a promissory note in the amount of the difference between the amount of the bonds issued by the corporation and the appraised value of the Temple home. To this Dr. Temple agreed and the amount of the note in favor of the bank was fixed in the sum of $1,040 to be secured by a deed of trust on the debtors' home. He thereupon advised his wife of his agreement and together they called at the office of the bank on October 11, 1934, and signed the note in the sum of $1,040 as well as the deed of trust, both of which were then delivered to the bank. The trust deed was not notarized until October 31. However, after the bank had deposited in escrow with a title company a ''Mortgagee's Consent to Take Bonds'' on October 29 it then placed in the same escrow appellants' note for $1,040 and their trust deed with instructions to ''record the trust deed one minute after the HOLC mortgage.'' Such trust deed was recorded immediately after the

mortgage on November 27, 1934. The bank did not advise the corporation of its receipt of the note for $1,040 and the trust deed.

In view of the foregoing recitals we are to determine whether because of the belated consummation of the transaction the court below was justified in finding that the letter of July 20, 1934, was a sufficient notice to impart knowledge to the corporation that the bank would take a second lien upon the property to secure a portion of the original indebtedness due bank by appellants.

The Home Owners' Loan Corporation was an agency of the federal government created during the worldwide depression for the purpose of affording relief to home owners who were in such financial distress that they could not discharge existing encumbrances on their homes. (Title 12, U.S.C.A., § 1461.) The act was intended solely for their benefit. The corporation would not refund a mortgage if the creditor required a second lien to secure any portion of the original debt unless the debtor gave the the corporation reasonable assurance that he would be able to fulfill all obligations undertaken in exchange for the original debt. In order to make such determination it was necessary for the Home Owners' Loan Corporation to be fully advised of the amount and terms of any proposed second lien, and if such second lien should be taken by the creditor without the corporation's knowledge it would be void. (*Shiver* v. *Liberty Bldg.-Loan Assn.*, 16 Cal.2d 296 [106 P.2d 4].)

Appellants contend that the letter of July 20, 1934, was not notice of the bank's intention to take a second lien by reason of the time which elapsed between the date of that letter and October 29, 1934, the date of the filing of its mortgagee's consent with the escrow holder. They base their contention primarily upon the decision of *McAllister* v. *Drapeau*, 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800], which was the first judicial declaration of the nullity of a second lien as in violation of public policy when taken by the creditor who accepts bonds for his mortgage without first having made a disclosure to the Home Owners' Loan Corporation of his intention to require such lien for a portion of the debtor's obligation. But in that case the existence of a second lien was "kept secret" from the corporation and the defendant had threatened foreclosure of the original mortgage unless

plaintiffs delivered their note for $1,300 and a second trust deed on their home.

In view of the bank's letter of July 20 indicating its expectation to receive "a satisfactory adjustment of the deficiency" it cannot be said that the corporation was without notice. The contents of that letter were presumptively within the knowledge of the corporation at all times subsequent to its receipt. That it was sufficient to impart knowledge of the bank's intention to the corporation was not an unreasonable inference. According to custom that letter was necessarily a part of the file which contained all communications from the bank on the subject of Dr. Temple's property. It cannot be presumed that the corporation sealed that letter upon receipt of it or destroyed it or continued to ignore its contents. It was a part of the negotiations which began in July and continued to the date of the receipt by the escrow holder of all documents affecting the title of the Temple property. The trial court was justified in inferring from the silence of the corporation as to the letter of July 20, that the latter would not oppose the adjustment of the deficiency between the parties. The Supreme Court in *McAllister* v. *Drapeau* at page 110 approves of three cases arising in other jurisdictions which upheld second liens taken with knowledge on the part of the corporation.

From the cases cited herein it is evident that the corporation had had many experiences with mortgagees who had obtained secret second liens and that it was by reason thereof sensitive to any suggestion of a mortgagee that the latter must receive from its debtor something more than the bonds which it had offered for the bank's mortgage. Moreover, there is no evidence of any unfairness on the part of the bank.

The authorities cited by appellants (*Woods* v. *Kern County Mutual Building & Loan Assn.*, 34 Cal.App.2d 468 [93 P.2d 837]; *Richard R. Adams Co., Inc.* v. *Pacific States Sav. & Loan Co.*, 34 Cal.App.2d 723 [94 P.2d 370]; *Rockwood* v. *Brown International Investment Co.*, 51 Cal.App.2d 241 [124 P.2d 612]; *Morrison* v. *Landers,* 56 Cal.App.2d 607 [133 P.2d 34]) do not support their contention. In the first two no disclosure was made to the corporation. In the Rockwood case the trust deed was secretly taken and not recorded until a month after the transaction had been closed. In the Morrison case, while defendants obtained approval of a second trust deed for $750 they did not disclose that they were

taking unsecured notes from the debtor in the sum of $1,145 which was the excess of the new loan over the appraised value of the property.

■ The findings are attacked upon two grounds, namely: (1) they were unnecessary because of the "Settled Statement on Appeal"; (2) they are contrary to the facts declared in that statement. Neither attack is justified. Findings are not essential when the agreed statement consists of ultimate facts only, but where the stipulation covers evidentiary facts it is the duty of the court to make findings. (*Zimmerman* v. *Continental Life Insurance Co.*, 99 Cal.App. 723 [279 P. 464].) The settled statement contains not only a recital of many probative facts but also the deposition of a witness and some eleven exhibits. From these and judicial knowledge the findings are amply supported.

■ The eight findings attacked disclose no contradiction to the settled statement and the inferences fairly deducible therefrom, as will be observed from our résumé of the proof and the substance of the criticized findings, which are as follows: The bank's consent of October 29 was a continuation of the refunding negotiations and it was required by the corporation for the purpose of making an adjustment of the amount to be paid to the bank; the letter of July 20 was sufficient to impart knowledge of the bank's intention; it is not true that the bank agreed to accept bonds of the corporation in full settlement of its claim against plaintiffs; it is not true that the bonds were given to the bank in consideration of the bank's agreement to take the corporations' bonds and release in full all claims against the Temple property; it is not true that the note and trust deed were executed to the bank without the knowledge of the corporation; it is untrue that the consideration for the note and trust deed was void; the terms and payment of the $1,040 note were fair and reasonable and within the spirit of the Act of 1933 and of the rules of the corporation; the note and trust deed were not a secret second lien. The court was not bound to decide the case upon the single item of proof that on October 29, 1934, the bank filed its consent to take the bonds "in full settlement" of its claim against appellants. On the contrary, it was a just inference from all the proof that the corporation had knowledge of the bank's intention to take a trust deed for a further sum.

■ There being sufficient evidence to support the find-

ings, all intendments must be resolved in favor of their correctness; all reasonable inferences must be drawn in support of them. The fact that a contrary inference might have been deduced by the trial court does not warrant a reversal. Respondent must be granted the benefit of every inference that can reasonably be drawn in support of his judgment. (*Lorraine* v. *City of Los Angeles*, 55 Cal.App.2d 27, 30 [130 P.2d 140]; *Herberts etc. Inc.* v. *Laurel etc. Corp.*, 58 Cal. App.2d 684, 690 [138 P.2d 43]; *Redmond* v. *City of Burbank*, 43 Cal.App.2d 711, 713 [111 P.2d 375].)

Appellants contend under the language of *McAllister* v. *Drapeau, supra,* that the mortgagee's consent to take bonds was tantamount to an agreement to accept the bonds in full settlement of the creditor's claim and therefore constitutes an accord and satisfaction or a novation. The note for $1,040 having been executed on October 11 and the consent to take the bonds having been filed on October 29, appellants contend that the filing of the latter document was a complete release of the entire original indebtedness. But it must be remembered that the negotiations of the parties extended over more than three months. The filing of the ''Consent to Take Bonds'' was not an isolated and complete act in itself. It was only one of a series of events which terminated with the deposit in escrow of all the writings used in effecting the original purpose of the parties. The delivery of the $1,040 note and trust deed by appellants to the bank was also one act of that series. Considering it with all other steps in the negotiations it was fairly determinable that the bank delivered the consent on October 29, because appellants had already signed their note and trust deed and promised to acknowledge the latter. Inasmuch as appellants had agreed to give the bank the note and trust deed as a part of the consideration of their release from the original debt, the fact of their delivery into escrow subsequent to October 11 does not diminish their value as such consideration. (*Shiver* v. *Liberty Bldg.-Loan Assn., supra.*)

Judgment affirmed.

Wilson, J., and Fox, J. pro tem., concurred.