[Civ. No. 13366. First Dist., Div. One. Nov. 5, 1947.]

LILLIAN R. DANDINI, Appellant, v. A. O. DANDINI et al., Respondents.

Johnson, Harmon & Stirrat and William H. Henderson for Appellant.

James M. Conners, as Amicus Curiae, on behalf of Appellant.

Leo R. Friedman for Respondents.

FINLEY, J. pro tem.—At the time of the filing of this action plaintiff Lillian Remillard Dandini and defendant A. O. Dandini were husband and wife. Plaintiff sought and was awarded judgment against said defendant for permanent support and maintenance. She also sought but was denied judgment setting aside and annulling the assignment and transfer by said A. O. Dandini of 253 shares of stock of defendant Remillard-Dandini Company, a corporation, to the defendants Sesenna.

The trial court found said stock to be the property of O. Creste Sesenna and Rose Cungi Sesenna, husband and wife (also known as O. Mario Sesenna and Rose Cungi), as trustees for their son Manlio Sesenna and their daughter Julianna Sesenna, and that A. O. Dandini has no right, title, claim or interest therein. From this finding and that part of the judgment predicated thereon plaintiff appeals.

Appellant's maiden name was Lillian Remillard. In 1860, her father and a partner established the Remillard Brick Company which was turned into a California corporation in 1879. It will be referred to herein as the Remillard Company. The stock of this corporation all came to be owned by the Remillard family. Appellant's father died first and subsequently upon the death of her mother in 1934, the stock all became vested in appellant, partly in her own right and the balance in trust for Emma Remillard, her sister.

Appellant married respondent A. O. Dandini on August 23, 1932. They separated June 1, 1938. In the summer of 1934, just after the death of appellant's mother the Remillard-Dandini Company, also a California corporation, was organized. It will hereafter be referred to as the Dandini Company. To this newly formed corporation the Remillard Company conveyed 60 acres of land including two factories, which constituted all of its operating business, together with its accounts receivable. In exchange it received 300 shares of stock in the Dandini Company, 150 shares of which were transferred by the Remillard Company to respondent A. O. Dandini and the remaining 150 shares retained.

The 150 shares of stock were transferred to respondent A. O. Dandini pursuant to a triparty preorganization agreement entered into by the Remillard Company, the Dandini Company and A. O. Dandini. This agreement provided among other things that A. O. Dandini was to be president and manager of the Dandini Company for a period of five years at a compensation of $300 per month plus a commission of 75 cents per thousand bricks manufactured, the payment of this commission to be contingent upon the company being out of debt to outside parties and having the necessary funds available with which to pay the bonus.

On August 18, 1939, the Remillard Company individually and in the name and on behalf of the Dandini Company filed action No. 154,456 in the Superior Court of Alameda County against A. O. Dandini and the four other directors of the Dandini Company, other than appellant Lillian Dandini. An

accounting and other relief were sought. An injunction was issued therein on September 11, 1939, restraining A. O. Dandini from disposing of all property coming into his hands through use of funds or property of the Dandini Company. The matter came to trial and on October 14, 1943, the court ruled that respondent A. O. Dandini had misappropriated from the Dandini Company the sum of $51,404.04 and gave judgment for $43,399.55. The remaining $8,044.89 was found to be barred by the four-year statute of limitations. The findings also show that late in 1938, and early in 1939, the then directors of the Dandini Company passed a resolution and took all steps necessary to have issued to respondent A. O. Dandini 100 shares of stock in the Dandini Company valued at $10,000 in return for cancellation of his accrued commissions on the sale of brick in the sum of $38,000. The court found the transaction to be fraudulent; that respondent Dandini was, on account of the financial condition of the Dandini Company, not then entitled to receive payment although his accrued commission actually amounted to $38,000. It was adjudged that respondent Dandini should return the 100 shares of stock to the Dandini Company within 30 days or in lieu thereof the company was to recover $10,000.

As above stated the action in the Alameda County court was commenced August 18, 1939, the injunction was issued on September 11, 1939, and the court made its ruling on October 14, 1943. On October 19, 1939, the block of 100 shares just referred to above, together with an additional 151 shares standing in the name of respondent A. O. Dandini were transferred by him to the respondents Sesenna. This was followed on May 18, 1942, by transfer of two additional shares for $100 each, making 253 shares in all. Appellant in her brief treated these two latter shares separately explaining that "the evidence of fraud primarily concerns the transfer of the 251 shares." The trial court's finding that Dandini paid $100 each for the two shares and that said sum was their fair and reasonable value is supported by the evidence.

At the trial of the present action the transferees admitted knowledge that Dandini was having trouble with his wife and was involved in litigation, but denied that they knew that this trouble or litigation had anything to do with any of the stock. The trial court found that it was not true that the Sesennas "accepted and received said conveyance and transfers of all or any part of said stock with knowledge of any fraudulent intent on the part of A. O. Dandini and/or with

knowledge that *104* or any other part of said shares had been fraudulently issued to A. O. Dandini and/or with full or any knowledge of the facts alleged in the complaint against A. O. Dandini filed in said action No. 154,456 in the superior court of the State of California in and for the County of Alameda.'' (Emphasis added.)

In her opening brief appellant outlines the main point raised on appeal as follows: ''Was there substantial evidence supporting the decision of the lower court holding that the transfer by A. O. Dandini to the Sesennas of the Remillard-Dandini Company stock was made for consideration and not with intent to defraud his wife, Lillian R. Dandini?''

In order to resolve the appeal in favor of appellant on the point as stated, it would be necessary for this court after appraising all evidence favorable to respondents in any degree to hold as a matter of law that it is so inherently improbable or so devoid of substantiality that the trial judge could not have believed it, or within the realm of reason could not have found therein any substantial support for its finding that the transfer of stock was made without any guilty knowledge on the part of the Sesennas and for consideration and not with intent to defraud.

Disregarding all conflicts, evidence favorable to the finding that there was consideration for the transfer of the 251 shares may be summarized as follows: Respondent Dandini owned patent rights on a marine device referred to as a hydrosphere. He wanted to display this device at the World's Fair on Treasure Island in 1939. He lacked the funds with which to construct the hydrosphere and a suitable building in which to display it on the fair grounds. Some effort had been made by him to enlist financial backing but without avail until he interested respondent Oreste Sesenna and his wife Rose Cungi Sesenna whom he had known since 1932. In December, 1938, the Sesennas turned over to Dandini $17,500 in cash and took in return a promissory note dated December 23, 1938, bearing interest at 7 per cent per annum, due June 23, 1939, and payable to Rose Cungi (actually Rose Cungi Sesenna). There was also an agreement executed before a notary public on December 23, 1938, whereby A. O. Dandini as ''inventor'' assigned to O. Mario Sesenna a one-half interest in the hydrosphere and all income therefrom.

On January 25, 1939, the Sesennas delivered to Dandini an additional $3,200 in cash and took another promissory

note bearing interest at 7 per cent per annum, due July 25, 1939, and payable to Oreste Sesenna (O. Mario Sesenna).

The building was erected and the hydrosphere constructed and displayed at the fair. The venture was not a financial success. In August, 1939, both notes being past due, the Sesennas began to press Dandini for payment. Oral and written requests were made without avail. Finally, the Sesennas consulted an attorney and after a letter written by the attorney to Dandini was unavailing three separate actions were filed by the Sesennas against Dandini, a separate action on each note and one on the agreement. The purpose of the latter was to recover one-half of the income obtained from display of the hydrosphere.

In negotiations following the filing of these actions Dandini was represented by an attorney. Being without funds he offered the Sesennas 251 shares of the stock in the Dandini Company standing in his name. The offer was accepted and on or about October 19, 1939, the stock was transferred to the Sesennas. The actions were thereupon dismissed and the notes and agreement relating to the hydrosphere were returned to Dandini.

The transfer of the stock was accompanied by an agreement reserving unto Dandini an option to buy it back at any time within seven years for the sum of $25,000. The agreement further provided for payments of $83.33 per month to be made by Dandini as a condition to keeping the option alive during the seven-year period. These monthly payments were not to apply on the purchase price. If Dandini missed three consecutive monthly payments his option was subject to cancellation. He was entitled to vote the stock so long as his option was in good standing. All dividends were payable to the Sesennas and were to apply on the purchase price of $25,000 in the event Dandini repurchased the stock.

Subsequent to the execution of this agreement four monthly payments of $83.33 each were made followed by default for three consecutive months. Notice of default and election to terminate the option was served on July 19, 1940, and thereupon Dandini's interest in the stock ended.

Appellant contends that the course of dealing just outlined was not bona fide but followed a scheme or design calculated by respondents to fraudulently deprive appellant of her community interest in the stock so transferred. She stresses evidence of the friendly relationship existing between Dandini and the Sesennas which it is claimed culminated in

marriage between Dandini and Julianna Sesenna after the judgment was entered herein. She calls attention to eight so-called "badges of fraud" which she claims to be reflected by the evidence and urges that thereby the entire transaction is plainly tabulated as fraudulent. . She also calls attention to discrepancies and conflicts in the testimony and points to claimed improbabilities which she urges must surely brand all of the testimony of respondents as false. For the first time she urges in this appeal that even assuming the loans were made as claimed the anticipated and contemplated concession for the loan would exceed the lawful interest rate and would therefore constitute an illegal transaction void as to her.

The function of an appellate court is not to invade the jury box or usurp a prerogative of the trial judge. If a finding made is supported by competent and substantial evidence it must stand. It is not enough to say that equally competent and substantial evidence in the record would just as adequately, or from a consideration of mere lifeless words even more adequately, support a contrary finding. It has always been recognized by reviewing courts that the position of vantage from the standpoint of accurately weighing evidence rests with the judge or jury before whom the witnesses personally appear. Their words are recorded but not the appraisal of their testimony induced by personal observation. It is true that the character of the testimony itself may supply some index, but seldom with sufficient accuracy or completeness to be reliable in those instances where there could arise any reasonable doubt as to adequacy of the proof.

██ From our appraisal of all the evidence and a consideration of the persuasive arguments made by appellant we cannot say that we would not have arrived at a different conclusion had we sat in judgment in the trial court. But neither can we say that the evidence appearing in support of the assailed finding is not adequate or that as a matter of law it is so inherently improbable, even considering the relationships and history of the parties, as to warrant our intervention. "It is not sufficient that the testimony may disclose circumstances which are unusual." (*Kidroski* v. *Anderson,* 39 Cal.App.2d 602, 605 [103 P.2d 1000].) It does not involve a "physicial impossibility" nor is "its falsity . . . apparent without resort to inference or deduction." Therefore, it cannot be disregarded. (*Tobola* v. *Wholey,* 75 Cal. App.2d 351 [170 P.2d 952] ; *Hales* v. *Snowden,* 19 Cal.App.

2d 366, 372-373 [65 P.2d 847].) Moreover, even if it be assumed that some of respondents' testimony was shown to be incredible, it was still the privilege of the trial court to believe the rest of their testimony which supports the finding. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 184 [168 P.2d 946].)

In *Washko* v. *Stewart,* 20 Cal.App.2d 347, 348 [67 P.2d 144], the rule applicable here is stated as follows: "While the question of the sufficiency of the evidence to support a finding may be presented for review, the duty of the appellate court stops when it has determined that there is some substantial evidence to support it. Ordinarily on appeal the court does not and should not pass upon the weight or preponderance of evidence, and it will uphold the finding of the trial court if there is some substantial evidence to support it, even though it would have decided otherwise if it had been the trier of the facts. (2 Cal.Jur. 912, 913.) No rule of appellate procedure is more firmly settled than this. In such cases the court is concerned only with the single inquiry, Does the record contain any substantial evidence tending to support the finding assailed? and if there is such evidence, which is not inherently improbable, the answer must always be that the trial court has conclusively decided the question." (See, also, *DeTray* v. *Higgins,* 31 Cal.App.2d 482, 491 [88 P.2d 241]; *Stevens* v. *Dillon,* 74 Cal.App.2d 178 [168 P.2d 492]; *Burnsed* v. *Murray,* 70 Cal.App.2d 589 [161 P.2d 413]; *Pierce* v. *Pierce,* 61 Cal.App.2d 694 [143 P.2d 948]; *McCarthy* v. *Security Trust etc. Bank,* 188 Cal. 229 [204 P. 818]; *Temple* v. *Corporation of America,* 71 Cal.App.2d 599 [163 P.2d 67]; *Bruce* v. *Bruce,* 71 Cal.App.2d 641 [163 P.2d 95]; *Hansen* v. *Bear Film Co., Inc., supra.*)

■ The trial court having found that the transfer of stock was made for consideration and was not fraudulent, and it being the judgment of this court that said finding is not without sufficiently substantial support in the evidence, we must further find that the transfer, aside from consideration of actual fraud, did not constitute an unlawful preference which could be set aside at the behest of appellant. This is not a proceeding in bankruptcy and the extinguishment of the antecedent indebtedness which the trial court found to have existed constituted sufficient consideration for the transfer. In *United States Fid. & Guar. Co.* v. *Postel,* 64 Cal. App.2d 567, 571-572 [149 P.2d 183], the court stated the rule as follows: " 'It is well settled in this state that the extin-

guishment of security or a preexisting debt *constitutes* a valuable consideration for the sale or assignment of property. (*Hart* v. *Church,* 126 Cal. 471, 480 [58 P. 910, 59 P. 296, 77 Am.St.Rep. 195].) ▇ It is also a well-settled law of this state that in the absence of fraud a debtor may prefer one creditor in preference to another. Section 3431 of the Civil Code provides: "In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract." Section 3432 of the same code provided: "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." . . . ▇ nor does the fact that such preference hinders or delays other creditors in the collection of their claims render it void, nor the fact that the preferred creditor had knowledge that such consequence would follow the preference. (12 Cal.Jur. 1010, 1011; *In the Matter of Muller & Kennedy,* 118 Cal. 432 [50 P. 660]; *Priest* v. *Brown,* 100 Cal. 626 [35 P. 323].)' "

The remaining issue suggested in appellant's brief but not mentioned in her complaint nor contained in her initial outline of the "question involved" is predicated upon her claim that the concession for the loans of $17,500 and $3,200 exceeded the lawful interest rate which would render the transaction usurious and void as to her. She quotes section 1 of the Usury Law, Act 3757, 2 Deering's General Laws 1944, page 1349, and cites *Jameson* v. *Warren,* 91 Cal.App. 590 [267 P. 372]. Concerning the point therein similar to the one involved here that case merely holds that by the terms of a contract between the parties to the action it was sufficiently shown that it was their *intention* to violate the Usury Law and that the stipulation for the payment of *interest* was unenforceable. The case is not authority for the proposition that the entire transaction was void but on the contrary holds that the fact that the interest charged was usurious and uncollectible did not deprive the lender of the right to possession of certain stocks pledged as security for repayment of the loan.

Appellant also cites *Scales* v. *Scott,* 13 Cal. 76, and *McKenty* v. *Gladwin, Hugg & Co.,* 10 Cal. 227. These cases were authority at the time they were decided for the proposition that provision for payment of illegal interest on a note must defraud creditors if enforced and that therefore the entire note was void as against creditors. The holding in *Scales* v.

*Scott* was squarely founded upon the decision in *McKenty* v. *Gladwin, Hugg & Co.*, which in turn was predicated by specific reference on the so-called Statute of Frauds then in effect, Compiled Laws of the State of California, 1850-1853, chapter 3, section 20, page 202, which reads as follows: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods (1) in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, decree or judgment suffered, with the like intent as against the persons hindered, delayed, or defrauded, shall be void." "(1) The word 'goods' is in the enrolled copy, but 'things' or 'choses' was evidently intended."

This statutory provision has long since been repealed and the decisions founded thereon are no longer the law. ■ The Usury Act provides its own remedy and penalties which in no case deprives a lender of the right to receive his principal. In *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 622 [254 P. 956, 255 P. 805, 53 A.L.R. 725], the opinion reads in part as follows: "Respondents and also one set of *amici curiae* assert that in this case respondents should have had a sweeping provision in the judgment declaring not only forfeiture of the right to interest with penalties thereto, but also declaring forfeited and uncollectible the entire principal debt. There is not a semblance of merit in this contention. . . .

"Moreover, even a casual reading of the statute itself shows that the legislative intent was not to declare the whole contract void, but only the portion thereof relating to interest. The language in this connection is as follows: 'Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed.' The contention that the principal debt is forfeited is wholly inconsistent with merely deferring the collection of the debt until the full period of time it was contracted for has elapsed. No authority has been cited and none can be found holding the principal debt forfeited under such provision of a statute. The authorities cited by counsel, in so far as applicable at all, are in direct opposi-

tion to this contention, for in *Jackson* v. *Shawl*, 29 Cal. 267, 272, the court said:

" 'The plaintiff's promise was to repay to the defendant the sum borrowed in one month, and also to pay him seven per cent per month on the principal sum for its use. Here the contract between the parties was legal as to the principal sum, but illegal as to the interest. The two things were not inseparable. "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the common law doth divide according to common reason; and having made that void that is against law, lets the rest stand. The general and more liberal principle now is, that when any matter, void even by statute, be mixed up with good matter, which is entirely independent of it, the good part shall stand and the rest be held void.'' (2 Kent's Com., 467, and cases cited; *DeGrott* v. *Van Duzer*, 20 Wend. (N.Y.) 421; *Leavitt* v. *Palmer*, 3 N.Y. 37 [51 Am.Dec. 333] ; 1 Parsons Cont., 380.) '

"In *Innes* v. *Goldwater*, 30 Cal.App. 101, 105 [157 P. 18, 19], the court again said: 'In the light of this express approval of the principle declared in the case of *Jackson* v. *Shawl*, we are constrained to give application to that principle in the case at bar to the extent of holding that the agreement of the plaintiff with the defendant for these several loans and pledges were legal in so far as the principle sum of such loans and security therefor were concerned, and only illegal as to the interest to be charged, and hence that the plaintiff was not entitled to recover the personal property so pledged and made the subject of this action without first tendering and offering to repay to the defendant the amount of his original loans.'

"Of course, if it were impossible to ascertain how much of the sum contained in the note of $34,000 was principal and how much thereof was imputable to interest, there might well be made the contention that inasmuch as some of the transaction was void because prohibited by the statute, all should be so declared, but such is not the fact. The evidence shows without conflict that the item of $1,020 was a three per cent commission, and that the remainder of the sum, to-wit, $32,980, was actually delivered to and received by the respondents as principal. The interest is, therefore, clearly severable from the principal. The fact that they are contained in the same instrument is no argument against such a construction and,

as above noted, the statute declares only the obligation to pay interest void, but nowhere assails the integrity of the obligation to repay the principal.''

The Usury Act prescribes a one year period within which recovery of the penalty may be had for violation of its provisions. In *Kurzman* v. *Commercial Credit Co.*, 33 F.2d 358, the District Court, N.D. California, Second Division, referred to the act as a special law, unknown to the common law and a statute creating a right rather than limiting one. It held that such a statute is not affected by the general rules relating to tolling of statutes of limitation and that failure to discover the usury could not prolong the life of the course of action created.

In *Taylor* v. *Budd*, 217 Cal. 262, 266 [18 P.2d 333], the Supreme Court expressed a somewhat different theory. Referring to the remedies available to plaintiffs therein, the opinion reads as follows: ''They are clearly entitled to recover treble the amount of interest paid under the note during the year preceding the action. (Usury Law, sec. 3; 2 Deering's Gen. Laws, 1931, Act 3757, p. 1908.) They are also entitled to recover the actual usurious interest paid prior to the year preceding the action, and within two years of the suit. The penalty of treble interest specified in the act has been held in this state to be cumulative, and not to abrogate the common-law remedy to recover money paid under illegal provisions of a contract.''

The complaint in this action was filed two years and approximately eleven months after the stock was transferred. Assuming, but without holding, that appellant herein would be a proper party to raise the usury issue where the alleged usurious contract was between her husband and the Sesennas, any cause of action predicated on the act itself would, viewing the matter most favorably to appellant, be barred by the two-year statute.

Inasmuch as we must hold that under the rules referred to above there is sufficient legally competent and substantial evidence to sustain the findings and that portion of the judgment attacked, the judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 5, 1947, and appellant's petition for a hearing by the Supreme Court was denied December 29, 1947.